IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| Rashonda McClellan, | ) | Case No. 23-11197 |
| | ) | |
| Debtor. | ) | Hon. David D. Cleary |
| | ) | |

**CHAPTER 7 TRUSTEE'S RESPONSE IN OPPOSITION TO MOTION
TO CONVERT CHAPTER 7 BANKRUPTCY TO CHAPTER 13**

Ariane Holtschlag (the "**Trustee**"), not individually but as the chapter 7 Trustee for the bankruptcy estate of Rashonda McClellan (the "**Debtor**"), by and through her attorneys at the Law Office of William J. Factor, Ltd., now files her response in opposition to the Debtor's motion to convert her case from chapter 7 to one under chapter 13.

**BACKGROUND**

The Debtor commenced this case on August 25, 2023, by filing a voluntary petition for relief under chapter 7 of the United States Bankruptcy Code. Alongside her petition for relief, she filed a full set of schedules and a statement of financial affairs (the entire filing attached hereto as **Exhibit A** to this Response) and an application to pay her filing fee in installments (**Exhibit B**).

On her original Schedule A/B, part 1, listing real property, the Debtor listed that she owned one piece of real estate, 10112 S. LaSalle St., Chicago, IL (Ex. A, page 11/57[1]) and one car (a 2019 Mercedes GLS) (Ex. A, page 12/57). The Debtor, by checking the "no" checkboxes, indicated that she had no bank accounts or businesses (Ex. A, page 15/57), and no retirement

---

[1] With this Response's citations to page "X/Y" of a form, the Trustee is indicating the page number applied to the top of every filing by this Court's CM/ECF system, and that system's reflecting the total number of pages in the filing, rather than any preprinted pagination that may be found the form itself.

accounts (Ex. A, page 16/57). She listed that she had been employed by TransUnion for about five years, and that her monthly gross wages were $5,800.00 (Ex. A, page 38/57). She listed that her monthly take-home was $4,600.00 and that she had no other sources of income (Ex. A, page 39/57), and that her expenses exceeded her income by $600 per month (Ex. A, page 42/57). On her statement of financial affairs, she listed that she had not transferred any property outside the ordinary course of business (Ex. A, page 51/57) and did not own or have an interest in any business in the past four years before filing for bankruptcy (Ex. A, page 54/57). She certified under penalty of perjury that these disclosures were true and correct (Ex. A, pages 43/57 and 55/57).

Prior to her meeting of creditors, the Debtor submitted prepetition paystubs and tax returns to the chapter 7 trustee. Her paystubs (**Exhibit C**) reflect that the Debtor is paid biweekly, and that as of her paydate July 21, 2023 (that is to say, the last paycheck in the seventh month of this year) she had grossed $68,112.95, allowing for an average gross, in 2023, of $9,730.42 per month. Her tax returns (**Exhibit D**) reflect gross income from wages, in 2020, of $87,074, and in 2021, of $91,881.

The Trustee's investigation, in the meantime, began uncovering the discrepancies found in the Debtor's schedules and other papers. The Trustee discovered that not only was the Debtor the owner of the 10112 S. LaSalle property that she disclosed, but also that she owned 307 Salisbury Drive, Munster, IN 46321 (the deed transferring ownership to her is attached hereto as **Exhibit E**) and 1909 W. 115th Street, Chicago, IL 60643 in joint tenancy (**Exhibit F**). The Trustee also identified that the Debtor was a manager of P3P Consulting LLC d/b/a P3P Logistics LLC.

On September 22, 2023, the Debtor appeared at her meeting of creditors and was

2

examined about these matters, and others, and on October 10, 2023, the Debtor moved to dismiss her case. This request was denied on October 18, 2023. On October 11, 2023, this Court had granted the Trustee's application to employ the Law Office of William J. Factor, Ltd., as the Trustee's counsel, and on October 18, 2023, after the motion to dismiss was denied, its undersigned professional reached out to the Debtor to try to schedule a viewing of the Salisbury property. On October 19, 2023, counsel appeared on the Debtor's behalf and indicated that they would be seeking to convert the case. No further steps were taken on that order for about a week and a half, and the undersigned, to protect the estate's interest in the Salisbury property (not being the Debtor's residence, its condition required prompt investigation, and a motion for relief from the automatic stay had already been filed) filed a motion to compel cooperation with a potential realtor for the Salisbury property (see dkt. 46 in this case).

Six days later, the Debtor, through counsel, filed a motion to convert her case (**Exhibit G**). The motion to convert alleges only one reason to convert the case: "Debtor is able to fund a Chapter 13 plan because Debtor now has a full-time position." (Ex. G, page 5/5.)

On November 13, two days before the Motion to Convert was noticed for presentment, the Debtor filed amended schedules (**Exhibit H**) an amended statement of financial affairs (**Exhibit I**), and a draft plan (**Exhibit J**).

The Debtor's new schedules disclose an ownership interest in 10112 S. LaSalle as well as 307 Salisbury (Ex. H, page 2/24), and her new statement of financial affairs now discloses a transfer of property, almost-assuredly 8016 S. Rhodes Avenue (Ex. I, page 5/7). Three vehicles are disclosed (Ex. H, pages 2-3/24), three bank accounts (Ex. H, page 4/24, not including one "custodial" account), $70,500 across two apparent "retirement accounts" (Ex. H, page 5/24), and while the Debtor's business remains unscheduled as an asset (about which, more below), P3P

3

Consulting is at least listed as a business on the Debtor's statement of financial affairs (Ex. I, page 7/7).

Her newly-disclosed income approximately matches the paystubs in the Trustee's possession, and her receipt of child support is for the first time disclosed, as well as a thousand dollars per month of business income (Ex. H, pages 21-22/24). Her expenses had previously left her negative $600 on a monthly basis – she was now $3,720.92 positive (Ex. H, page 24/24).

On November 15, 2023, the Trustee's counsel and the Debtor's counsel appeared at presentment on the Debtor's motion to convert the case and on various other matters, and a briefing schedule was set forth allowing until November 29, 2023 for the Trustee to respond in opposition to that motion.

## **ARGUMENT**

The Debtor's prior false statements in her first set of schedules (some of which appear not to have been corrected), and her false testimony at her meeting of creditors, and her lack of diligence in correcting admitted falsehoods, each reflect bad faith, and any one of these failures would appropriately render her ineligible to convert. Furthermore, the Debtor has not sincerely indicated an interest in paying her creditors, and the best interest of creditors and the bankruptcy estate require the administration of this case in chapter 7.

As a temporal matter, a debtor may convert a case under chapter 7 to one under chapter 13 at any time, if the case hadn't already been converted. 11 U.S.C. 706(a)(1). However, a case may not be converted to a case under another chapter unless the debtor may be a debtor under that chapter. 11 U.S.C. 706(d).

Consequently, a debtor can forfeit the right to convert to chapter 7 by engaging in "bad-faith conduct." *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 367 (2006). When a

4

debtor seeks to convert her case from chapter 7 to chapter 13, the question of good or bad faith is a question of fact determined by the totality of the circumstances, including both prepetition and postpetition conduct. *In re McDonald*, 508 B.R. 187, 204 (Bankr. D.Colo. 2014). The potential forfeiture of the right to convert arises from 11 U.S.C. 1307(c)'s providing that a chapter 13 may be dismissed "for cause," and bankruptcy courts – as the Supreme Court notes approvingly – routinely treat prepetition bad-faith conduct as "cause" for dismissal. *Marrama*, 549 U.S. at 373-74. Accordingly, "[b]ecause 706(d) conditions conversion on eligibility, a proposed chapter 13 debtor must meet the threshold requirements of section 109(e) *and* satisfy section 1307(c) concerning dismissal of a case for cause." *In re Alcantar*, 2021 WL 4192680 at *2 (Bankr. N.D.Ill. 2021), *citation omitted, emphasis in original*. Furthermore, this Court has the capacity to deem individual debtors who engage in fraudulent or bad faith conduct ineligible for relief under 11 U.S.C. 105(a). *Id.*

Ultimately, a debtor who files a case under chapter 7 replete with misleading, false, and inaccurate information, "by, for example, fraudulently concealing significant assets, thereby forfeits [her] right to obtain chapter 13 relief." *Marrama*, 549 U.S. at 367. This forfeiture through bad faith, for concealing significant assets and other reasons, is found here; the Debtor's motion to convert must be denied.

1. *The Motion to Convert is Insufficiently-Pleaded.*

The Debtor's bad faith is the paramount concern, but the obvious facial insufficiency of the Debtor's Motion to Convert cannot pass by without the Court's attention.

It argues only that the Debtor "is able to fund a Chapter 13 plan because Debtor now has a full-time position." However, as noted *supra*, the Debtor had, before the petition date, been grossing almost ten thousand dollars per month, has worked for Transunion for at least five years,

5

and that has has received child support for a significant amount of time. By reciting that the Debtor "now" has a full-time position, the Motion to Convert insinuates that she couldn't have funded a chapter 13 plan any earlier. This is false.

But this is the only argument that the Debtor proffers. It is factually misleading and blatantly seeks to evade the actual reason that the Debtor seeks to convert. This Court would appropriately permit her to offer nothing else: "It is well-settled that new arguments cannot be made for the first time in reply. This goes for new facts too." *Gold v. Wolbert*, 867 F.2d 1327 at fn. 6 (7th Cir. 1989), *citations omitted*.

The Debtor, instead, filed false, misleading, and incomplete schedules that would have, if unexamined, simply engineered a "no-asset" chapter 7 bankruptcy for herself. It beggars credulity to suggest that her conversion is predicated on a new-found ability or desire to repay. The Debtor filed chapter 7 certifying that she couldn't repay anybody, but now she seeks to convert and "evade [her] obligations under chapter 7," *Alcantar* at *4, that is to say, the Trustee's effort to liquidate assets she didn't disclose.[2]

Finally, the timing of the request to convert – only after her examination about significant

---

[2] *A propos* any desire to repay creditors, it is telling that the Debtor's proposed chapter 13 plan here seeks to separately classify her student loans, providing them no distribution through the standing trustee. Her proposed plan provides that no payment shall be made to: "Department of Ed/Navient" because "Debtor's student loan obligations are currently in deferment and shall not be paid by the Chapter 13 Trustee." Ex. J, at page 6/8. Without knowing when these debts come due, the Trustee cannot say that this is impermissible: A chapter 13 plan may provide for direct payment on what are colloquially known as "long-term debts," for which the last payment comes due after the end of the plan, 11 U.S.C. 1322(b)(5), as may be the case with her student loan claims. Her election to add this provision, however, goes to show that the Debtor is not actually approaching chapter 13 hoping to repay her creditors. Her amended schedule E/F suggests that her student loans make up more than 83% of her general unsecured debts (Ex. H, pages 13-18/24) and her plan guarantees those claims nothing. Relatedly, her amended schedules I and J reflect that the Debtor is able to fund a plan payment about $985 per month higher than the $2,735.00 per month plan she proposes (Ex. H, page 24/24); again, such a plan may be confirmable, but it shows that the Debtor is not putting forth her best efforts. The Debtor, instead, has submitted a proposed plan that only pays those claims she is not able to exclude, over the longest-possible time she can take.

6

undisclosed assets at the 341 hearing, only after the Trustee's counsel sought to obtain the Debtor's cooperation with the Trustee's administration of the case – "indicates the motion [to convert] was filed to avoid turning over this information and these assets and therefore, was filed in bad faith." *McDonald*, 508 B.R. at 207.

2. *The Debtor's false schedules, her false testimony at the meeting of creditors, and her delay indicate bad faith.*

It is the Trustee's burden to show the Debtor's bad faith, and the Trustee must do so by a preponderance of the evidence. *See, e.g., In re FMO Associates II, LLC*, 402 B.R. 546, 551 (Bankr. E.D.N.Y. 2009). Bad faith is shown by a totality of the circumstances (*see e.g. In re Dale*, 610 B.R. 524 (Bankr. E.D.N.C. 2019), finding requisite bad faith when the debtor "wildly overvalued" a cause of action, then amended to list its value as zero, before ultimately seeking to convert to chapter 13 to take the cause of action back from the chapter 7 trustee).

When one observes this case alongside the Supreme Court's *Marrama* decision, in fact, the parallels stand out: In both, the debtor misrepresented the value of property, and only sought to convert subsequent to the chapter 7 Trustee's efforts to liquidate the property at issue. There, the Supreme Court affirmed the lower courts' finding that Marrama had acted in bad faith, and this Court should find the same.

    2.a: Real estate:

The Debtor falsely certified, on her original schedules, that she only owned one piece of real estate, 10112 S. LaSalle property. Her amended schedules reflect that she presently owns two, and public records disclose a third. In any event, the Debtor's original schedules were knowingly false. Filing misleading or "wildly inaccurate" schedules is regularly seen as bad faith, warranting denial of a request to convert (*see In re Zamora-Quezada,* 622 B.R. 865, 882 (Bankr. S.D.Tex. 2017), in which the court found that the debtor "significantly misrepresented its

7

financial condition on its initial schedules and compounded that misrepresentation by delaying its corrections, and where the "[a]mended schedules and SOFA present an entirely different situation than debtor's initial schedules and SOFA.").

At her meeting of creditors, the Debtor testified, in reference to the Salisbury property:

*TRUSTEE: Do you own any other real estate?*
*DEBTOR: No, that's about it.*
*TRUSTEE: Have you owned any other real estate in the last four years?*
*DEBTOR: Um, I have.*
*[…]*
*TRUSTEE: And what was the address of that property?*
*DEBTOR: That was on Salisbury Drive.*
*[…]*
*TRUSTEE: And then, what happened to that property?*
*DEBTOR: […] I just couldn't afford it.*
*TRUSTEE: So was it foreclosed, or do you still own it today, or what? Do you own it today or has it been disposed-of in some way?*
*DEBTOR: Um, I guess, I know I haven't been able to pay anything on it, in over a year or more, so…*

Subsequently, Jennifer Toth, from the Office of the U.S. Trustee, inquired of the Debtor:

*U.S. TRUSTEE: So, you listed the property that you own, in Chicago. But you didn't list any other property that you own. Can you tell me why?*
*DEBTOR: Because I didn't think that it was necessary because I haven't paid anything on it […]*
*[…]*
*U.S. TRUSTEE: You own other real estate?*
*DEBTOR: Well, it's in my name, so I guess, perhaps, I should have.*
*U.S. TRUSTEE: So, do you own property in Indiana?*
*DEBTOR: Yes. […]*
*[…]*
*U.S. TRUSTEE: Do you own any other property, besides [Salisbury and] La Salle Street, that you did not list?*
*DEBTOR: No.*

The secured lender's motion for relief from stay on the Salisbury property, however, indicates that, "As of October 4, 2023, the loan is past due for the July 1, 2023 payment in the

8

amount of $3,012.99, [and] the August 1, 2023 to October 1, 2023 payments in the amount of $3,030.11 each." (See dkt. 25, at page 3/4.) Put differently, according to the motion for relief, when the Debtor commenced this case on August 25, 2023, she was less than two months behind in payments. The Debtor's plan, furthermore, seeks to cure $15,133.43 in mortgage arrearages relating to the Salisbury property – that is to say, the arrearage disclosed in the October motion for relief, plus the payment that comes due in November, when that plan was filed (see Ex. J, at page 2/8). The Debtor's explanation for why she did not disclose the Salisbury property is not credible.

Neither the original schedules, nor the amended schedules, disclose property at 1909 W. 115th Street, in Chicago. This, similarly, had to be located by the Trustee's efforts. At the Cook County Clerk's ledger of recorded documents, document number 0604520180 is a warranty deed transferring the property to the Debtor (there, by the name Rashonda Barksdale, again, see Ex. F) and Lawrence McClellan, and document number 1309426083 reflects a municipal violation against her and Lawrence McClellan. From the 341 meeting, relating to this parcel:

> *TRUSTEE: So [your ex-husband] may own it, but you do not?*
> *DEBTOR: Correct.*

This is not borne out by the public records. The Cook County Clerk reflects that the Debtor's interest has never been transferred to Lawrence individually, or anybody else.

    2.b: <u>Vehicles and business</u>:

The Debtor scheduled one car on her original schedule of personal property, and three vehicles, including an "International Pro Star," a class 8 truck (18-wheelers are also class 8), when her schedules were amended. Again, this reflects a lack of good faith on the Debtor's part, but also points up further circumstances requiring an investigation that the Debtor appears unwilling to undertake.

9

Though undisclosed on her original schedules and statement of financial affairs, the Debtor was a member-manager of a logistics company (at the 341 meeting, the Debtor described its logistics work as "hauling vehicles from one place to another with a trailer") when the case was filed. The Debtor's amended schedule of personal property does not list her membership in P3P Consulting LLC. The Debtor's Amended Statement of Financial Affairs indicates that she had a "10% interest in P3P Consulting," and that P3P Consulting LLC ceased to exist in March of 2023 (see exhibit K, at page 7/7). However, the Illinois Secretary of State's website lists that P3P Consulting was involuntarily dissolved postpetition, on October 13, 2023. (See attached **Exhibit K**.). The Debtor's listing the vehicles in her amended schedules may have been a salutary effort to disclose its assets that may have transferred to her upon whatever she believed to be its closure (the interests of P3P's creditors or its other member remain unclear), but this makes her original schedules that much more misleading

In any event, at the 341 meeting, the Debtor testified:

*TRUSTEE: And did the business have any assets? So obviously there's this Mercedes, but other than that, did the business own any trucks, trailers, equipment, inventory? And any other kinds of assets, other than the Mercedes?*
*DEBTOR: Not owned. Leased, but not owned.*
*TRUSTEE: Okay. And then what happened to those items?*
*DEBTOR: Um, in terms of, what my brother still has, the vehicle that he was hauling with, so.*
*TRUSTEE: Any other assets remaining of that business?*
*DEBTOR: Um, not that we have any financial involvement with, no.*

The Debtor's amended schedules render false the Debtor's explicit testimony that P3P Consulting LLC did not own any other assets. Her amended schedule I, furthermore, indicates that she receives $1,000.00 a month in business income, despite P3P's apparent termination, and despite her not having an interest in any business.

2.c: <u>Income:</u>

10

The Trustee notes that similar gamesmanship with the Debtor's income has been a through-line of this case. During the course of the chapter 7 case, the Debtor had repeatedly tried to act indigent, and only corrected these assertions now that she's seeking to convert to a repayment plan. This, too, is bad-faith conduct, rendering her ineligible to convert to chapter 13.

On her application to pay the filing fee in installments, she certified that she was unable to pay the full filing fee at once (see Ex. B).[3] This is implausible, given the Debtor's corrected income, but shown to be false when her amended schedules reflect that she had money in the bank with which she could have paid the fee, or just over $70,000.00 in various retirement accounts.

Finally, at the section 341 meeting, the following exchange took place:

*TRUSTEE: And are you employed currently?*
*DEBTOR: I am.*
*[…]*
*TRUSTEE: And are you salaried or hourly? How much are you making right now?*
*DEBTOR: I'm salaried.*
*[…]*
*DEBTOR: I make $2,077 biweekly, so every two weeks.*
*TRUSTEE: Okay. Any other sources of income for you and your household right now?*
*DEBTOR: I wish. [Laughs.] No.*

Her amended schedule I, and amended statement of financial affairs, reflect that the Debtor receives $1,400.00 per month child support, that she has been receiving child support for years, and that she earns $1,000.00 a month in business income. This income was only disclosed attendant to the Debtor's effort to convert her case to a chapter 13 repayment plan.

2.d: <u>Delay:</u>

The Debtor filed her case on August 25, 2023 with inaccurate schedules; she was

---

[3] As of this writing, three payments of $83.50 have been paid; the court may take notice of the same on its own docket. Exhibit B also makes clear to a debtor that she must pay the filing fee before making payment to an attorney to assist her with her case, and it appears that the Debtor has declined to follow that guidance (see dkt. 55 in the above-captioned case). This suggests that her honesty on the application to pay filing fee in installments may merit investigation.

11

examined about these schedules four weeks later, at her meeting of creditors on September 25, 2023. She admits that she had undisclosed property "in my name," and testified falsely as to her income.

The Debtor thereafter, on October 10, 2023, moved to dismiss her case (arguing only that the case should be dismissed "because case was filed pro se," (see dkt. 28) but this request was denied on October 18, 2023.

The next day, counsel appeared on her behalf.

Amended schedules were still not filed until November 13, 2023, which was also the last day by which a timely objection to the Debtor's motion to convert could be filed.

The Debtor's lack of diligence on such fundamental matters, even with able counsel, both reflects, and constitutes, bad faith in this proceeding. "While a concealment of assets is the usual ground for a finding of bad faith, a debtor's intentional and deliberate delay in amending[…] for purpose of gaining an economic or tactical advantage… can also constitute bad faith." *In re Shethi*, 389 B.R. 588, 598 (Bankr. N.D.Ill. 2008)*, internal quotations and citations omitted*, (speaking specifically about amended exemptions), *see also In re Blackmon*, 628 B.R. 804 (Bankr. D.S.C. 2021), (finding bad faith when schedules were amended to disclose assets only after those assets had been discovered in a warehouse), *Zamora-Quezada*, 622 B.R. at 868-72 (finding bad faith partially-arising from delay when original schedules were filed June 30, 2016 and amended schedules were filed on October 24, 2016; the Trustee submits that the Debtor's 80-day delay in amending her schedules (August 25, 2023 to November 13, 2023) is not significantly better than Zamora-Quezada's 116-day delay, given the circumstances in this case).

## CONCLUSION

The Debtor's bad faith in the conduct of this case is shown from the manifold

contradictions in her filed documents and her testimony, and her delay in correcting those errors that she has corrected. Although pro se litigants are often held to less-stringent standards than lawyers, the Court must consistently and fairly apply the rules to all parties. *In re Moss*, 633 B.R. 711, 713 (Bankr. D.S.C. 2021).

      The Trustee has met her burden to show that the Debtor's motion to convert was filed in bad faith, and requests that the Debtor's insufficient and flawed motion to convert to chapter 13 be denied, and requests that this Court grant such other relief as it deems just and proper.

Dated: November 29, 2023        Respectfully submitted,

**Ariane Holtschlag, not individually, but as chapter 7 Trustee for the estate of Rashonda McClellan,**

By: */s/ Justin R. Storer*

Justin R. Storer (ARDC 6293889)
Law Office of William J. Factor, Ltd.
105 W. Madison St., Suite 1500
Chicago, Il 60602
312.373.7226
jstorer@wfactorlaw.com

13