**UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE: ) | |
| Rashonda McClellan ) | Case No: 23-11197 |
| ) | Judge: Donald R. Cleary |
| ) | Chapter 7 |
| Debtor(s) ) | |

**DEBTOR'S REPLY TO CHAPTER 7 TRUSTEE'S RESPONSE IN OPPOSITION TO MOTION TO CONVERT CHAPTER 7 BANKRUPTCY TO CHAPTER 13**

NOW COMES the Debtor, Rashonda McClellan, by and through the Debtor's attorney, David Freydin and the Law Offices of David Freydin, PC, and hereby states his Reply to Chapter 7 Trustee's Response in Opposition to Motion to Convert Chapter 7 Bankruptcy to Chapter 13.

**Background**

The Debtor filed the above captioned voluntary petition Pro Se for relief under Chapter 7 of the United States Bankruptcy Code on August 25, 2023. Ariane Holtschlag has been appointed as the Panel Trustee (Trustee). This Court has jurisdiction over this proceeding pursuant to 28 U.S.C §1334 & 157. This is a core proceeding pursuant to 28 U.S.C §157.

The Debtor's 341 meeting was held on September 22, 2023. On October 04, 2023, Justin R. Storer on behalf of Ariane Holtschlag, trustee, filed a motion to Employ Justin Storer and the Law Office of William J. Factor, Ltd. as General Bankruptcy Counsel. That motion was granted on October 11, 2023 at Docket #29. On October 16, 2023, the Trustee filed an Initial Report of Assets at Docket #31.

1

On October 10, 2023, the Debtor filed a Motion to Voluntarily Dismiss her Chapter 7 bankruptcy. That motion was denied on October 18, 2023. Debtor then decided to retain an attorney to see what her options were in this bankruptcy. On October 19, 2023, David Freydin filed an appearance on behalf of the Debtor. On November 01, 2023, Justin Storer filed a Motion to Compel Rashonda McClellan to Cooperate with Proposed Realtor Regarding 307 Salisbury Dr., Munster, IN, filed by Justin R. Storer on behalf of Ariane Holtschlag, trustee at Docket #46. That motion is still pending.

On November 07, 2023, the Debtor filed a Motion to Convert from Chapter 7 to Chapter 13 at Docket #47. That motion is also still pending and is the subject of this briefing schedule. There are also still two motions for relief from the automatic stay that are pending, one from AmeriHome Mortgage Company, LLC with respect to the property located at 10112 S LaSalle St., Chicago, IL 60628 and one from Nationstar Mortgage LLC with respect to the property located at 307 Salisbury Drive, Munster, IN 46321.

The Trustee makes two main arguments as to why the Debtor's Motion to Convert should be denied. The first argument is that the Motion to Convert is insufficiently pled, because it argues only that the Debtor "is able to fund a Chapter 13 plan because Debtor now has a full-time position and does not address the Trustee's other concerns with this conversion.

Second, the primary argument that the Trustee makes is that a debtor can forfeit the right to convert to chapter 7 by engaging in "bad faith conduct." *Marrama v. Citizens Bank of Massachusetts, 549 U.S. 365, 367 (2006).*

Trustee goes on to point out numerous discrepancies between the Debtor's original pro se filing, the tax returns, pay advices, and amended schedules filed by Brian Deshur on November 13, 2023 at Docket #53, and the Amends Statement of Financial Affairs at Docket #58. The Trustee's argument is these discrepancies constitute a bad faith filing that should prevent the Debtor from converting from Chapter 7 to Chapter 13.

While Debtor admits that there were inaccuracies in her original schedules that were corrected by the amended filings, Debtor does not believe that the discrepancies demonstrate that she engaged in bad faith and that she should be allowed to convert her case from Chapter 7 to Chapter 13. Debtor also believes that the Motion to Convert was properly pled and that the Court should grant the Debtor's Motion to Convert from Chapter 7 to Chapter 13. Debtor offers the following argument in support of that position.

### Motion to Convert was Properly Pled

11 U.S.C. 706(a)(1) allows a Debtor to convert a case under chapter 7 to one under another chapter at any time, if the case hadn't already been converted. Debtor has not been in another chapter of bankruptcy in this case and Debtor is a regular wage earner that can afford the repayment plan and she has even attached a Plan as an Exhibit to the Motion to show that she can propose a plan in good faith pursuant to Section 1325 of the bankruptcy code.

Debtor disputes the Trustee's contention that the motion is not properly pled. 11 U.S.C. § 706 states that (a) The debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title. Any waiver of the right to convert a case under this subsection is unenforceable.

(b) On request of a party in interest and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 11 of this title at any time. (c) The court may not convert a case under this chapter to a case under chapter 12 or 13 of this title unless the debtor requests or consents to such conversion. (d) Notwithstanding any other provision of this section, a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter.

Debtor only needs to present her motion and why she thinks she should be able to convert. Debtor does not need to anticipate every objection that a party could have to the motion and explain that in the motion. Now that the Trustee has objected and laid out the reason for their objections to the motion, Debtor should be able to lay out defenses to those objections in the form of this reply, as these objections are being presented for the first time in writing. Having to do that in the reply does not make her original motion insufficiently pled and the Trustee's objection to the Motion to Convert on those grounds should be denied.

### Debtor Did Not Intentionally Fail to Disclose Assets

In this case, the Trustee's main reason for alleging that the Debtor engaged in bad faith is that the Debtor filed a case under chapter 7 replete with misleading, false, and inaccurate information. Debtor does not deny that the initial schedules were inaccurate.

Debtor was not represented by counsel and made many mistakes on her initial filing. Debtor owns three pieces of real estate, one located at 10112 S LaSalle St, Chicago, IL, a second located at 307 Salisbury Dr, Munster, Indiana, and a vacant lot located at 1909 W 115th, St, Chicago, IL.

Only the LaSalle St property was listed on the original petition (Trustee Exhibit A Page 11) and only the LaSalle St. and Salisbury Dr property were listed on the amended schedules (Trustee Exhibit H, Page 1 and 2).

Debtor's father passed away on May 15, 2019 and Debtor's mother resides at 18555 Country LN, Lansing, IL 60438. Debtor has been residing there and helping take care of her mother, who has been ill. Debtor did not want to spend the money to drive back and forth from her mom's house to her house, which would have taken up a great deal of time and increased transportation and car maintenance costs. 10112 S LaSalle St, Chicago, IL is her marital property that she was awarded in her divorce and she has not been residing there but had intended to keep the property when she filed and thus listed in her schedules with a mortgage payment of $1500.00 for insurance and $400.00 for insurance that she listed in the homeowner's association section of Schedule J (Trustee Exhibit A, Page 40).

The reason that the Debtor did not list the Salisbury Drive Property was that she had not been living there, she had originally wanted to move with her adult daughter there, but after her father passed away, she needed to be by her Mom to help her with her medical issues. Debtor's daughter was living there and Debtor was not making payments.

Because she was not making payments there and not living there, she incorrectly thought the property lacked pertinence to the bankruptcy proceeding. She did admit to owning the property at the 341 meeting, although she did say she was not sure about the ownership status of the property due to her not having made payments.

5

She also was not behind as much as she thought she was at the time of filing. Once she consulted with her new attorney and found out how much it would be to cure the arrears on the property, Debtor decided that she would like to keep the property so that her adult daughter can live there (Trustee Exhibit J, Page 2). However, at the time the case was filed, she did not think she could afford the house or keep it and therefore did not think it needed to be listed.

The reason she did not list the vacant lot at 115th St. is that it was a lot she bought with her husband back in 2006 and she thought that he had been awarded that lot in the divorce. Debtor has not been paying property taxes and the 2019 and 2020 taxes have been forfeited. Attached as Debtor's Exhibit A is property tax information from the Cook County Assessor's Office. Attached, as Debtor's Exhibit B is a copy of the Debtor's plan that she would file if the motion to convert is granted, surrendering the lot. Attached, as Debtor's Exhibit C is the Amended Schedule A and Schedule H that disclose the lot and her cosigner, Lawrence McClellan. Those amendments have been filed with the Court.

Debtor has amended her schedules to disclose the lot and the proposed plan to surrender the lot, because she has no use for that lot. Debtor was not trying to hide anything from the Trustee by not listing that. She has not been making any tax payments on the lot for the last four years and she did not think she still owned the lot at the time of filing.

As for the other assets the Trustee mentioned in the response that were not disclosed, the reason for them not being listed is similar to the reason for not listing the Salisbury Property. Debtor had owned P3P Consulting LLC, but the business had shut down in March of 2023 and Debtor did not think she had to list that on her schedules. Debtor did testify that she owned the business at her 341 hearing.

6

Debtor had bank accounts with Chase, Navy Federal Credit Union, USAA Checking, and Old National Custodial Checking, but the accounts had less than $1000.00 in them and Debtor did not think they needed to be listed, because there were not large sums of money in the accounts.

She also failed to list electronics and cell phones, because she didn't realize those needed to be disclosed. Those have been corrected with the amended filings (Trustee Exhibit H and I).

On her Schedule I, the Debtor only listed her base income and it was understated because Commissions and Holiday Pay were not included in the calculation. (Trustee Exhibit C). Debtor did not realize that she needed to disclose the income that she cannot always rely on and she did not think Child Support counted as income, that she thought she was only being asked about her employment income. Those issues have been corrected on the amended schedules (Trustee Exhibit H).

Debtor was thinking about bankruptcy as being something someone files to list all their debts so their bills are discharged without appreciating the importance of asset disclosure and completing the statement of financial affairs. Debtor made too many assumptions about what was pertinent and what was not pertinent and as a result ended up omitting information from her schedules.

Debtor admits that she should not have tried to file this case without an attorney. There are too many bad assumptions that she made about what needed to be disclosed and what was not necessary to list on the schedules. Debtor realizes now that she would have been much better off hiring an attorney before she filed the case.

There was no fraudulent intent though, Debtor provided accurate copies of her income and taxes to the Trustee, and she did answer questions about the assets and income at the meeting. Debtor made a mistake by not filling out the paperwork properly, she did not act in bad faith.

### **Debtor's Case is Significantly Different from the Zamora-Quezada Case**

Trustee is arguing that per Marrama, 549 U.S. at 367, the Debtor has forfeited her right to convert to Chapter 7 by acting in bad faith. Debtor admits that the Marrama standard is the proper standard for converting a case and that with the Trustee objecting on the basis of good faith, that the question of good or bad faith is a question of fact determined by the totality of the circumstances, including both prepetition and post-petition conduct.

The Trustee also uses *In re Zamora-Quezada, 622 B.R. 865 (Bankr. S.D. Tex. 2017)* as an example of how the 5th circuit applied the Marrama standard to deny a Debtor's request to convert a case from Chapter 7 to Chapter 11 and should similarly do so in this case where the Debtor is trying to convert from Chapter 7 to Chapter 13.

The Debtor in the Zamora-Quezada is much different than this Debtor. In that case, the Debtor chose to file this bankruptcy on the advice of its counsel at the time, Grissom and Csabi, in an effort to avoid Hitachi's collection efforts for the judgment it holds. See generally Hitachi Ex. 29; see also In re Davis, 93 B.R. 501, 503 (Bankr. S.D. Tex. 1987) (reasoning that bankruptcy is not suitable as a litigation tactic, especially when the bankruptcy is essentially a two-party dispute between the debtor and a creditor). *ID at 883*

8

The Debtor in this case was not advised by counsel to file a bankruptcy, she initiated her proceeding pro se and only hired David Freydin and Brian Deshur after it became clear to her that she did not have the legal knowledge and skill to navigate the legal proceedings involved in this case and was at risk of losing her assets due to the Trustee trying to liquidate assets to pay the Debtor's creditors.

She also was not using the bankruptcy as a litigation tactic to frustrate or defraud her creditors. She was trying to use the bankruptcy as a means to deal with her debts, but because she was not represented by counsel, she did a poor job of picking which chapter she should be in and preparing her paperwork correctly.

Once the Debtor realized that she was in over her head in this bankruptcy, she first decided to try to dismiss the case and deal with the creditors outside of the bankruptcy. When that motion was denied, she immediately tried to convert this case to a Chapter 13 and hired legal representation to represent her in that endeavor.

Zamora-Quezada not only had issues with how the schedules were prepared, but that Debtor was also a bad actor through the entire process. "Debtor's alleged bad faith occurred not only pre-petition but continued post-petition as Debtor's initial schedules and SOFA were wildly inaccurate. To wit, shortly after filing its Motion to Convert, Debtor filed an Amended SOFA. See generally ECF No. 93. The Amended schedules and SOFA present an entirely different situation than Debtor's initial schedules and SOFA. Compare ECF No. 93 with ECF No. 1 at 5-37. In its Amended SOFA, Debtor freely admits to the pre-petition transfers of $355,436.00 to J&M FLP, provided documentation of 883*883 such, and also transferred the medical practice from Debtor to an affiliated entity. ECF No. 93 at 24-59." ID 882-883

9

The court also found, "Debtor was insolvent and had been for a long time. ECF No. 153 at 282-290. Irrespective of anything else, transferring assets from an insolvent entity is specifically the type of behavior that the Supreme Court spoke of in Marrama when discussed bad faith conduct by a debtor. Compare ECF No. 93 at 55-59 and ECF No. 153 at 282-90 with Marrama, 549 U.S. at 367, 373-74, 127 S.Ct. 1105." ID 883

In this case, the Debtor was not using the bankruptcy code to frustrate her creditors. In fact, the two secured creditors that have mortgages in this case have not expressed any objection to the conversion nor have any unsecured creditors filed an objection to the conversion. The Trustee is the only party that is objecting to the conversion in this case.

Furthermore, the Trustee has not done much legal work in this case. The Trustee held a 341 meeting and has employed legal counsel. Before they have begun the effort of selling assets and disbursing to creditors, the Debtor tried dismissing her case.

When that motion to dismiss was not successful, she petitioned the court to convert the case before the Trustee had performed hours of legal work trying to sell assets for the estate. There has been no delay in bringing this request to convert and creating needless additional work for the Chapter 7 Trustee. That should also demonstrate that the Debtor is making a good faith effort to convert.

Debtor in this case is not insolvent, is a regular wage earner and she is attempting to use the Chapter 13 conversion as a stall tactic to allow her to deplete estate property. Debtor is an account manager at Trans Union LLC making $7,156.24 per month.

10

In addition to that income, she has rental income of $1000.00 per month and Domestic Support payments of $1400.00 per month. Attached, as Exhibit D is the Debtor's amended Schedule G for the lease that has since been filed with the Court.

Debtor nets $9,588.32 per month. She is not insolvent, in fact due to her income she should have filed a Chapter 13 initially, but because she did not have legal counsel, she was not aware that she made too much money to qualify for Chapter 7 relief. Debtor should be allowed to convert her case and reorganize her debts in a Chapter 13 consolidation.

Her circumstances are very different from the Zamora-Quezada case both in terms of her prepetition conduct and her ability to repay her creditors if the Motion to Convert is granted. The Trustee has only shown that there are discrepancies in the schedules, the Trustee has not shown that this rises to the level of a bad faith under Marrama that the Debtor should be denied the request to convert her case to Chapter 13.

### The Conversion Meets the Good Faith Standard of Section 1325

The Seventh Circuit has joined the majority of circuits in holding that the good faith determination must be made on a case-by-case basis in reliance on the facts of each case. *Smith, 848 F.2d at 817; Rimgale, 669 F.2d at 431*. With no comprehensive definition available the Seventh Circuit has adopted a "totality of the circumstances" test. *Rimgale, 669 F.2d at 432-33; Smith, 848 F.2d at 821*.

There are two good faith requirements for Chapter 13. Section 1325's "good faith" inquiry — which focuses on a debtor's plan—is distinct from whether a debtor's petition has been filed in good faith. *In re Love, 957 F.2d 1350, 1354 (7th Cir. 1992)* (discussing the "two separate good faith determinations in Chapter 13 proceedings").

11

Good faith under § 1325 is "incapable of precise definition," meaning that bankruptcy courts must "look at the totality of circumstances and, thereby, make good faith determinations on a case-by-case basis." Id. at 1355.

The guiding focus of the inquiry must be whether the plan is fundamentally fair to creditors and fair "in a manner that complies with the spirit of the Bankruptcy Code's provisions." *Id. at 1357; see also In re Shafer, 393 B.R. 655, 661 (Bankr. W.D. Wis. 2008)* (reviewing the history of the "good faith" language and explaining that the ultimate question in this circuit is whether the debtors are "trying to pay their creditors, or... trying to thwart them"). ID

The Seventh Circuit has provided a number of nonexhaustive factors to guide the good faith analysis: (1) whether the plan states the secured and unsecured debts of the debtor accurately; (2) whether the plan states the expenses of the debtor accurately; (3) whether the percentage of repayment of unsecured debts is correct; (4) whether inaccuracies in the plan amount to an attempt to mislead the bankruptcy court; and (5) whether the proposed payments indicate a fundamental fairness in dealing with creditors. *In re Smith, 286 F.3d 461, 466 n.3 (7th Cir. 2002) (citing In re Rimgale, 669 F.2d 426, 432 (7th Cir. 1982)).* Additionally, "the accuracy of a debtor's financial disclosures in his plan" is relevant to the good faith inquiry. *Id. at 469.*

Debtor thinks the Court should consider the Debtor's proposed plan that was filed as an Exhibit to the Motion to Convert (Also Trustee Exhibit J) in determining whether the Debtor is trying to play games by converting the case and acting in bad faith or if she is filing that motion to convert in good faith, because she is now represented by counsel and understands her rights and responsibilities under the bankruptcy code.

First, the Debtor did not try to conceal her income from the Trustee. She provided pay advices and tax returns to the Trustee. She attended the 341 meeting. Her calculations on the schedules may have been wrong due to her representing herself and not doing the calculations correctly, but she was not trying to game the system and hide her income from the Trustee.

Her converting from a Chapter 7 case to a Chapter 13 case would not be an attempt to hinder and delay creditors and be part of a scheme to continue to frustrate her creditors. Debtor would have the money on Day 1 to pay her creditors and propose a feasible Chapter 13 plan, evidenced by the plan that was attached as an Exhibit to the Motion to Convert.

The Plan calls for payments of $2,735.00 per month for 60 months. It treats the claims of both Mr. Cooper and Amerihome mortgage by curing her arrears on those properties. It treats the City of Chicago Department of Water, who is another secured creditor in the case. It pays Mercedes-Benz Financial Services US in full on their claim at 10% interest. There are no cram down provisions for any secured creditors nor is anyone's lien being avoided. Secured creditors are being paid in full in the case.

Furthermore, the unsecured creditors are being paid 100% of their allowed unsecured claims with the exception of the Department of Ed/Navient. Those student loans are in deferment and the Trustee is not to disburse on that nondischargable unsecured debt.

The Trustee argues that excluding those payments from the Chapter 13 Plan demonstrates bad faith, because her election to add this provision, however, goes to show that the Debtor is not actually approaching chapter 13 hoping to repay her creditors. Debtor is an over median Debtor and has to pay her creditors back over a period of five years. She is paying unsecured creditors $49,522.00, which is not an insignificant sum of money.

The Student Loans are in deferment and Debtor is not acting in bad faith by not paying them in the Chapter 13 plan; she will owe them after the bankruptcy is discharged plus interest that accrued during the bankruptcy.

Debtor meets all the criteria for proposing a Good Faith Plan under Section 1325. While that does not address the good faith in filing the petition, it does show that the motion to convert is not an attempt to delay and hinder creditors.

Finally, the Debtor also has no objection to the Trustee filing an Administrative Claim in her case and being paid in the Chapter 13 plan. Debtor is satisfying the liquidation analysis and making the Trustee whole for work done in her case that was the result of the mistakes she made in her initial filing due to not being represented by counsel. She also realizes that if she does not perform under the Chapter 13 plan, that the case will almost certainly be converted back to a Chapter 7, which further protects creditors if this motion to convert is granted and the Debtor does not perform under the terms of the proposed plan.

## **Conclusion**

This is a case where a Debtor that does not regularly file bankruptcy thought that she could represent herself and did not appreciate the level of disclosure that is expected in a Chapter 7 bankruptcy. There were many things that she thought were not that important to her case that were very important.

However, she did not act in bad faith. She attended her 341 meeting and provided accurate copies of her tax returns and pay advices.

She answered the questions of the Chapter 7 Panel Trustee, the United States Trustee, and a creditors attorney. The meeting lasted for an hour and she did her best to answer the questions truthfully and accurately. Once she realized that she was in way over her head, she tried to dismiss the case. When that did not work, she hired an attorney to try to help her out of the mess she had created for herself. She did that very early on in the case before the Chapter 7 Trustee had incurred great expense in trying to recover assets for the estate.

The Trustee has shown that the Debtor had inaccurate schedules. The Trustee has not shown that the Debtor was a bad actor and acted with fraudulent intent that acted in bad faith.

The Debtor is proposing to pay creditors back over a period of five years, she is paying unsecured creditors 100% of their allowed proof of claims, and she is willing to pay an administrative claim for the time that the Trustee spent working on her case.

Debtor has shown that she can propose a feasible plan and that she has the income to fund it. Debtor should be allowed to try and perform under a Chapter 13 and repay her creditors.

WHEREFORE, the Debtor requests that the Trustee's objection to the conversion of the case be overruled, the Debtor be allowed to convert from Chapter 7 to Chapter 13, and for any other relief that this Court finds equitable and just.

Respectfully submitted,

/s/ David Freydin

Law Offices of David Freydin, LTD.
8707 Skokie Blvd, #312
Skokie, IL 60077-2269
(v): 312.533.4077 | (f): 866.897.7577